JUDGE HARDEN"
delivered the opinion oe the court.
Caswell Smith having become the purchaser at a decretal sale of about five hundred acres of land, for which he executed his bond payable to William Poague, the plaintiff in the suit, the commissioner transcending his authority as appears, attempted to convey the title to Smith. In July, 1850, an execution having been issued on the sale-bond and levied upon the land, it was sold by the sheriff, and purchased by A. W. Ferguson for $416.99, the amount of the debt of which, under some arrangement with Poague, he had become the owner; and on the 28th of June, 1851, Ferguson and Smith entered into a written agreement, stipulating for the lease of the land by the latter until the first day of March, 1853, for which he agreed to pay seventy-five dollars per annum rent; the contract reciting the fact that Smith believed that he could not redeem the land “ within the time prescribed by law,” and containing a covenant that he would surrender the possession at the end of the term “unless he should repurchase in the mean time.”
And simultaneously with the lease the parties also executed the following agreement:
“It is here distinctly understood by both parties that $430.18 was the amount of purchase-money on the within *78 five hundred acres of land, and $28.25 the amount of interest and cost of making deed to the first of March, 1851, from the time of purchase, which makes the within sum of $458.33, amount to be paid, together with rent, should said Smith repurchase in the mean time. Rent commencing on the first day of March, 1851.
June 28, 1851. Attest: Lexious Riffe.”
Ferguson died in 1855, and shortly thereafter his administratrix brought two actions against Smith for the recovery of rent; one of them upon said written contract, and the other for the use and occupation of the premises after its expiration; and a third action was instituted by the widow, administratrix, and children of Ferguson for the recovery of the land. These suits were consolidated and transferred to equity, the defendant pleading payment in bar of the actions for rent, and presenting an equitable defense in the ejectment suit. In his answer in the last-named case, which contained a counter-claim, the defendant alleged, in substance, that Ferguson made said .purchase of the land and obtained the sheriff’s deed therefor under an express contract with him that the deed when so obtained should operate as a mortgage for the purpose of securing the payment of the debt apparently satisfied by the purchase, but which in fact remained unpaid; and the stipulation for the payment of rent was merely a device to secure to Ferguson usurious interest on the debt; and that the pretended leasing was but a corrupt usurious arrangement under the pretext of a contract of renting; and the agreement for repurchasing the land within two years from the first of March, 1851, was only meant and intended to provide for the redemption of the land by payment of the debt, as in the case of an ordinary mortgage.
These averments, and others affecting the validity of the *79 asserted title of the plaintiffs, were controverted by appropriate replies.
And upon final hearing the court adjudged that the purchase and deed of Ferguson were made to secure the payment of the debt, and that the defendant had manifested his right to redeem the land, and to that end directed a sale of so much of the land as necessary to pay the debt, interest, and costs; and from that judgment the plaintiffs have appealed, and Smith has prayed a cross-appeal.
It is argued for the appellee that as the commissioner’s deed to him was made without authority it did not convey the legal title, and the land was therefore not subject to sale under the execution in the name of Poague; but if this be so, the agency of the appellee in procuring the sale to be made, and his subsequent acquiescence in it, were such as to estop him from relying upon the invalidity of his own title as a ground for avoiding the sale and conveyance to Ferguson.
But the main and controlling question to be determined is, whether Ferguson by his purchase and the sheriff’s deed to him acquired only the rights of a mortgagee, or was invested with the absolute right to the land as well as the legal title.
It is insisted for the appellants that neither the writings of the 28th of June, 1851, nor the evidence of a parol agreement preceding the sale, if admissible at all to affect the legal import of the sheriff’s deed, can establish more than a conditional contract for the repurchase of the land, or an enlargement of the statutory right of redemption until the first day of March, 1853.
It is often difficult to distinguish between a contract operating as a mortgage and a conditional sale; but if a transaction be of the latter character, we concede that the rights of a purchaser may be lost by a failure to perform the condition within the stipulated time. And it is equally true that a simple agreement for the extension of the time allowed by law *80 for redeeming land sold under execution is merely a waiver of the forfeiture of the right for the specified time, and does not have the effect of converting the purchase into a mere lien to secure the repayment of the purchase-money. (Southard v. Pope’s ex’r, 9 B. Monroe, 261.)
But an essentially different transaction is presented by the parol evidence in this case, if it is competent to qualify or affect the legal import of the writings.
It conclusively appears from the testimony of the sheriff and other evidence that the nominal purchase of the land by Ferguson for only about one fourth of its value was the result of an arrangement to vest the title in him through the forms of a sheriff’s sale and conveyance as security only for the debt, and that Smith assented to it on the faith of his assurances that he would obtain and hold the title subject to redemption by the payment of the debt. It appears from the testimony of the sheriff that he could have realized the amount of the debt by the sale of part only of the land; but Smith, relying on the agreement of Ferguson, desired that the whole five hundred acres should be bid off to him for the amount of the execution, and the sheriff acted accordingly. While it was undoubtedly designed to clothe the first transaction in the garb of an absolute purchase, and the subsequent written agreements in that of a conditional resale to Smith, we are satisfied from the evidence that the real object of the parties was to secure to Ferguson the ultimate payment of his debt, and a usurious compensation for indulgence in the form of a lease of the land; and the parol evidence was admissible to prove the real character of these transactions, both because they were infected with a usurious device, and the violation of the agreement under which Ferguson' purchased the land involved the commission of a fraud, against which Smith was entitled to relief in a court of equity. (Skinner v. Miller, 5 Litt. 84; Langhann v. Payne, 14 B. Mon. 624; Green v. Ball, 4 Bush, 586.)
*81 It results that the judgment providing for the redemption of the land must be affirmed.
But as it appears that several sums were paid by Smith as rents, the judgment which provides for the payment of interest on the amount of the debt from the 8th day of July, 1850, should have been credited by these sums; and the defendant was also entitled to a judgment for costs in each of the actions for rent and on his counter-claim; but it was proper to order the costs of enforcing the judgment, and such costs as were incidental to the prosecution of the suit for the purpose of enforcing the lien, to be taxed against him.
Wherefore the judgment is affirmed on the appeal and reversed on the cross-appeal, and the causes are remanded for a judgment not inconsistent with this opinion.